RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE   2 / 17 / 11
BY          ym

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| CARDIOVASCULAR SURGERY OF ALEXANDRIA, LLC, and TOMMY MACK GRANGER, M.D. | CIVIL ACTION NO. 10-1003 |
| -vs- | JUDGE DRELL |
| JOSEPH LARRY KERRY, JR. | MAGISTRATE JUDGE KIRK |

## R U L I N G

Before the Court is the appeal of Cardiovascular Surgery of Alexandria, LLC and Tommy Mack Granger, M.D. ("Plaintiffs") from the Bankruptcy Court's April 29, 2010 order dismissing their complaint for failure to state a claim. (Doc. 3-18). For the reasons given below we VACATE the Bankruptcy Court's order and REMAND the case for further proceedings not inconsistent herewith.

## BACKGROUND

The wife of Joseph Larry Kerry Jr. ("Mr. Kerry" or "Defendant") worked as Plaintiffs' Office Manager from 2002 until her dismissal in 2008. During her employment Mrs. Kerry defalcated or embezzled approximately $400,000 from Plaintiffs. She has since pled guilty to 17 counts of theft in excess of $500, for which she was sentenced to ten years in prison, fined, and ordered to make restitution.

Mr. Kerry's lifestyle while his wife worked for Plaintiffs was allegedly supported by the monies she stole from Plaintiffs, with Mr. Kerry's knowledge and consent. (Doc. 3-2, para. 8).

On June 22, 2009 Mr. Kerry filed a voluntary Chapter 7 petition for bankruptcy.  Mr. Kerry filed this petition without his wife, but the majority of the debts listed by Mr. Kerry, including the debt to Dr. Granger, were allegedly community obligations.  (Doc. 12, p. 6).

A Meeting of Creditors pursuant to 11 U.S.C. 341(a) occurred on August 18, 2009.  On October 16, 2009 Plaintiffs filed an adversary proceeding under 11 U.S.C. 523(a) challenging the dischargeability of Defendant's debt to Plaintiffs.  (Doc. 3-4, p.1).  Plaintiffs' complaint was thus filed fifty-nine days following the Meeting of Creditors, one day before the sixty day deadline for filing such actions.  Fed. R. Bank. Proc. 4004(a).

Plaintiffs' original complaint was brief, less than three pages long.  It recited that the adversary proceeding was a core proceeding in Defendant's chapter 7 case, the basis for jurisdiction, and the facts of Mrs. Kerry's fraud and conviction and Plaintiffs' pending civil suit against the couple.  Regarding Defendant's conduct specifically, it alleged only Defendant's knowledge of and benefit from the fraud before it claimed conclusorily that Defendant's "knowledge constitutes a basis for denying the debtor a discharge of his indebtedness to [Plaintiffs] pursuant to 11 U.S.C. § 523(a)(2)(A) and/or . . . (a)(6)."  (Doc. 3-2, para. 8).

In response Defendant filed a Motion to Dismiss for failure to state a claim on which relief can be granted.  The Bankruptcy Court held a hearing on this motion on March 10, 2010.  It granted Defendant's motion on the basis that the complaint actually stated a claim under § 523(a)(4) rather than the sections cited by Plaintiff, § 523 (a)(2) and (a)(6).  It gave Plaintiffs leave to amend their complaint within fifteen days to include a reference to 523(a)(4).  (Doc. 3-23, pp. 19-20).

2

Before Plaintiffs filed their amendment, on March 15, 2010, the Bankruptcy Court modified its ruling. It then denied Defendant's motion to dismiss in part, ruling that "[a]lthough the Court, at the hearing, announced that the plaintiff would be allowed fifteen days to file an Amended Complaint to enlarge the pleadings to include a reference to 11 U.S.C. §524(a)(4), after further review, the Court determines that no further amendment is required" and Plaintiffs could proceed on that basis. It also granted Defendant's motion in part, dismissing "all other grounds in the complaint." (Doc. 3-10, p. 1).

Plaintiffs sought leave to appeal the Bankruptcy Court's dismissal of these "other grounds." The Bankruptcy Court denied leave and opted *sua sponte* "to construe [Plaintiff's request] as alternatively seeking reconsideration of the ruling [to dismiss]." (Doc. 3-13, p. 1). It reasoned that though "there are remedies available" under the facts alleged in the complaint, "[w]hether or not this complaint states a claim that may survive a motion to dismiss under FRCP 12(b)(6)[1] . . . is another matter." (Doc. 3-13, p. 1). It specifically cited two recent Supreme Court cases on pleading standards as influencing its reasoning, *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ("*Iqbal*").

The Bankruptcy Court scheduled a hearing on the reconsideration for April 28, 2010. Before the hearing, Plaintiffs filed a "Motion for Leave to Amend" with a copy of their "Amended Complaint." (Doc. 3-15). The Bankruptcy Court granted this motion two days before the hearing. (Doc. 3-17). At the hearing, however, the Bankruptcy Court stated that it had unintentionally granted

---

[1] As noted by the Bankruptcy Court and below, the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure are made applicable in bankruptcy adversary proceedings through Federal Rules of Bankruptcy Procedure 7012(b).

3

the motion and that it would vacate its order doing so. (Doc. 3-24, pp. 5-6). The Bankruptcy Court also granted Defendant's Motion to Dismiss at the hearing. Unlike previously it did not give Plaintiffs leave to amend, replying, when Plaintiffs' counsel requested permission, "I tend to think it's too late." (*Id.* at p. 11). The Bankruptcy Court issued its final order the next day, granting Defendant's motion to dismiss and vacating its earlier order granting Plaintiffs leave to amend. (Doc. 3-18).

On May 7, 2010 Plaintiffs filed this appeal from the Bankruptcy Court's order. In addition to the Bankruptcy Designation of Record on Appeal (Doc. 3), we received timely preliminary filings from the parties and, per the Court's request, supplemental briefing on specific issues. (Docs. 5, 6, 11, and 12). On February 1, 2011 we held a hearing in which all counsel participated and all issues were discussed. We have reviewed all of this input in detail in rendering our decision here.

## LEGAL STANDARDS

As this is an appeal from a dismissal of a complaint, there are no contested issues of fact, only questions of law, which we review *de novo*. *In re Dunlap*, 217 F.3d 311, 314 (5th Cir. 2000) (citing *Traina v. Whitney Nat'l Bank*, 109 F.3d 244, 246 [5[th] Cir. 1997]).

In a Chapter 7 proceeding a debtor is generally discharged from all debts arising before the date of the order for relief, except those that are non-dischargeable under 11 U.S.C. § 523. Federal Rule of Bankruptcy Procedure ("FRBP") 4007(c) mandates that all objections to discharge must be brought within sixty days of the Meetings of Creditors, a requirement which courts construe strictly. *Dunlap*, 217 F.3d at 314; *In re McGuirt*, 879 F.2d 182, 182-83 (5th Cir. 1989); *Neely v. Murchison*, 815 F.2d 345, 346 (5th Cir. 1987).

4

The basis of Defendant's motion to dismiss is Federal Rule of Civil Procedure ("FRCP") 12(b)(6), made applicable to bankruptcy adversary proceedings through FRBP 7012(b).[2]  When reviewing a motion to dismiss, we must accept all well-pled facts as true and view them in the light most favorable to the non-moving party.[3]  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007).  "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949) (internal citations omitted).

The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, we must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." Legal conclusions "must be supported by factual allegations." *Id*. Upon identifying the well-pled factual allegations, we then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949; see also *Ivory v. Pfizer*, 2009 WL 3230611 at *2 (W.D.La. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949-50).

---

[2]  In addition to the usual Rule 8 pleadings standards, Federal Rule of Civil Procedure 9(b) requires that a claim for fraud be plead "with particularity." Courts typically apply this requirement in 523(a) proceedings when fraud is alleged. This requirement is not at issue here, as Defendant's spouse has been convicted of the fraud alleged, and Plaintiffs pled this fact in their complaint.

[3]  The following analysis is also employed in *Rhodes v. Prince*, 360 Fed.Appx. 555, 557-58 (5th Cir. 2010).

Under the second prong of this test, when specific facts are alleged that give rise to and put a defendant on notice of a claim, the claim should not be dismissed merely because the claim is not named. See *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005); *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006). So, where a plaintiff proceeds under a different claim than that alleged in its original complaint, it may amend its complaint implicitly, or explicitly through a motion to amend. The rules for amendment in adversary proceedings challenging dischargeability are the same "relation back" rules in the FRCP. See, e.g., *In re Bercier*, 934 F.2d at 693, fn. 7. Rule 15(c) permits an amended pleading to relate back so long any new claims alleged "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original complaint." FRCP 15(c); *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (defining the "same conduct, transaction or occurrence'" to mean that "so long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").

This standard is measured not by "the caption given a particular cause of action, but . . . the underlying facts upon which the cause of action is based." *Johnson v. Crown Enters, Inc.*, 398 F.3d 339, 342 (5th Cir. 2005) (quoting *Watkins v. Lujan*, 922 F.2d 261, 265 [5th Cir. 1991]). The permissibility of an amendment does not depend on the legal theory offered, and instead relates back notwithstanding that the proffered amendment offers a new legal theory. *Id.* (overruling a district court which did not permit an amendment because the claims in the original and amended complaints were "two separate and distinct claims that have different elements of proof and different procedural requirements," on the basis that "[t]his analysis does not follow Rule 15(c), which asks whether the new claim arose out of the same conduct, transaction, or occurrence as the originally-pleaded one.").

6

While the time limitations imposed under FRBP 4007(c) are strictly enforced, those Rules operate in conjunction with the relation back rules discussed above. See FRBP 7015 (explicitly applying Rule 15 of the FRCP to adversary proceedings). Ergo, provided the original complaint is filed within the deadline, there are no special rules inhibiting amendment that apply in these actions.

In a bankruptcy proceeding seeking to block discharge of a debt the discharge exceptions are construed narrowly in favor of the debtor. *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998).

Section 523(a)(2)(A), (a)(4), and (a)(6) provides that:

> [a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt– . . .
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by– (A) false pretenses, a false representation, or actual fraud . . .;
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .;
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Under 523(a)(2)(A) and 523(a)(4), courts have found that "innocent" spouses can "share" in their spouses' fraudulent intent, and that this shared intend can be inferred from the "innocent" spouses' knowledge of and benefit from the other spouse's fraudulent conduct. E.g., *In re Oliphant*, 221 B.R. 506, 511 (Bankr. D.Ariz. 1998).[4]

---

[4] Defendant argues to the contrary, citing *In re Allison* 960 F.2d 481 (5th Cir. 1992), and *In re Gauthier*, 349 Fed.Appx. 943 (5th Cir. 2009). In both of these cases courts found that certain fraudulent debts were nondischargeable as to one spouse but dischargeable to the other "innocent" spouse. *Allison*, 960 F.2d at 485-86; *Gauthier*, 349 Fed.Appx. at 944. However, neither case is analogous to the one before us. Specifically, in both cases the "innocent" spouse was completely unaware of and uninvolved with the other spouse's fraud. In *Allison*, the plaintiff stipulated to the innocent spouse's lack of knowledge and sought to impute fraud solely based on the marital relationship. *Id.* In *Gauthier*, which Defendant here quotes at length, the fraud was apparently committed and the debt incurred before the spouses had even met, and the plaintiff sought to deny the dischargeability of the innocent spouse's debt solely on the unconvincing basis that "§ 523(a) speaks only in terms of which debts–rather than individual debtors–may be discharged, and therefore the bankruptcy court may not enter an order of discharge as

Importantly, knowledge and benefit are not necessarily sufficient to satisfy the requirements of 523(a), and "culpable conduct" or fraudulent intent on the part of the "innocent" spouse must still be shown. *Id.* (citing *In re Reed*, 700 F.2d 986, 993, [5th Cir. 1983]). Fraudulent intent will not be presumed, but it may be proven inferentially:

> The "innocent" spouse's knowledge of the other spouse's fraudulent conduct may be relevant to an inference of fraudulent intent, depending on the nature and extent of such knowledge and on whether there are other relevant facts that bolster the inferential value of the knowledge. In certain cases, knowledge itself may be inferred where the facts and circumstances are so egregious that denial of knowledge is simply not credible. Fraudulent intent also may be inferred from other facts. For example, the nature and extent of the benefit conferred to the "innocent" spouse may be so great or unusual that it is reasonable to conclude that the "innocent" spouse engaged in fraudulent activity him or herself.

*In re Oliphant*, 221 B.R. at 511. The ultimate determination will necessarily be fact-intensive and case-specific. *Id*; see also *In re Lewis*, 424 B.R. 455 (Bankr. E.D.Mo. 2010) (denying summary judgment for Chapter 7 debtor-husband on "innocent spouse" theory in fraud-based nondischargeability proceeding brought by wife's employer; finding genuine issue of material fact existed as to whether husband knew of his wife's improper activity and conspired to defraud her employer, based solely on his having 20 years of financial experience and having personally benefitted from his wife's embezzlement through her purchase of vacation trips, high-end watches, and other luxuries their incomes could not reasonably support); *In re Surls*, 240 B.R. 899 (Bankr. W.D. Mo. 1999) (holding that one spouse's fraud may be imputed to "other" spouse, for purpose of excepting the resulting indebtedness from discharge, if "other" spouse either knew or should have known of fraud, or if "other" spouse was recklessly indifferent to his fraudulent spouse's acts); *In*

---

to [the innocent spouse] alone." 349 Fed.Appx. at 945. These cases therefore stand for precisely the rule discussed below and argued by Plaintiffs, that Defendant's fraud will not be imputed solely based on the martial relationship, but it may be for some other reason. Otherwise they are inapplicable here.

8

*re Baines*, 337 B.R. 392 (Bankr. D. N.M. 2006) (holding that genuine issues of material fact existed regarding extent of debtor-wife's participation in contracting business that both she and her husband owned, and regarding whether she had knowledge of or benefited from alleged acts of fraud by husband, precluded entry of summary judgment on whether husband's misconduct could be imputed to wife, for purpose of excepting debt from discharge in her Chapter 7 case based on grounds of false pretenses, false representation or actual fraud); but see *In re Tsurukawa*, 258 B.R. 192 (B.A.P. 9th Cir. 2001) (holding that unless debtor-spouse knowingly participated in her husband's fraud, or was his business partner and stood in agency relationship with him, marital relationship alone was not sufficient predicate for imputing husband's fraud to debtor-wife for purpose of denying her a discharge upon resulting debt, though debtor may have participated in husband's business, had reason to suspect that husband was engaged in wrongful conduct, and enjoyed benefits of that conduct).

ANALYSIS

Defendant ultimately makes two arguments as to why Plaintiffs' complaint should be dismissed. First, he argues that the complaint failed to state the correct legal grounds under which relief was sought. Second, he argues that, even where the grounds for relief were clear, the complaint failed to connect the facts it alleged with the elements underlying those grounds. While we agree, as Plaintiffs have conceded, that the original complaint was inartful, we find that neither of these deficiencies warrants dismissal under 12(b)(6).

On the first point, Plaintiffs' original complaint only cited § 523(a)(2) and (a)(6) as the exceptions for denying debtor's discharge. However, as originally noted by Defendant and developed by the parties and the Bankruptcy Court at oral argument, the facts alleged in the complaint seemed to better fit the § 523(a)(4) exception. Defendant argued that this failure to cite

9

the correct statutory provision meant that the complaint did not give him fair notice of the grounds for Plaintiffs' claims, and therefore that the complaint should have been dismissed under Rule 12(b)(6). This argument is superficially enticing but ultimately without merit, as the rules of notice and fact pleading permit a complaint to omit citation to precise legal theories or statutory provisions so long as it alleges facts sufficient to give rise to those theories. E.g., *Johnson v. Crown Enters, Inc.*, 398 F.3d 339, 342 (5ᵗʰ Cir. 2005); see also *Dura Pharmaceuticals*, 544 U.S. at 346-67; *Knox County*, 470 F.3d at 430. Moreover, Defendant here admittedly and plainly had notice of both Plaintiffs' claim and the factual grounds supporting it from the complaint. While the ambiguity in Plaintiffs' complaint would likely sustain a Rule 12(e) "Motion for a More Definite Statement," it does not warrant dismissal, particularly without leave to amend.

To the contrary, Defendant cites to *Murchison* and subsequent cases which hold that the § 523(a) time limits in FRBP 4004 and 4007(c) should be construed strictly. E.g., *Murchison*, 815 F.2d 345. We find these cases inapplicable here. Specifically, the plaintiffs in these cases typically[5] failed to file any complaint at all within the deadline and sought equitable relief based on the debtor allegedly having received notice of their claim by some other means. See *Murchison*, 815 F.2d at 346; *In re McGuirt*, 879 F.2d at 183. Moreover, these courts specifically distinguish their circumstances, from both those where a complaint or motion objecting to discharge was filed within

---

[5] Defendant also cites to *In re Bercier*, 934 F.2d 689 (5ᵗʰ Cir. 1991) as standing for the proposition that the Fifth Circuit has found "that there could be no relation back of an amendment" in adversary proceedings challenging dischargeability. This is a gross misrepresentation of that case. There, Plaintiffs sought to assert a new exception to discharge for the first time on appeal, after a full bench trial and judgment in the bankruptcy court. Under both the FRCP and FRBP, any claim not asserted at trial is indeed waived. However, this rule simply has no relevance to the rules governing the relation back of pretrial amendments. As the Court itself stated in *Bercier*: "We do not suggest that an amended complaint adding a ground of challenge to the dischargeability of a particular debt would not relate back . . . if [the new claims] arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original complaint." *Id.*, 934 F.2d at 693, fn. 7.

the deadline, thus "obviously g[iving] [the defendant] adequate notice," and those where the original filing "specif[ied] the factual circumstances of [its] alleged fraud and misrepresentation" instead of relying on mere "general allegations of fraud." *In re McGuirt*, 879 F.2d at 183-184 (where plaintiffs filed nothing in bankruptcy court, only a motion in state court praying "for relief from [the bankruptcy court's] stay" of the state court proceeding, and they alleged only that "the lawsuit involves numerous allegations of fraud and misrepresentation on the part of the debtor with respect to the mismanagement of a partnership," without any further elucidation or specificity). Both points distinguish these cases from that before us, where Plaintiffs filed a timely complaint in bankruptcy court, and they alleged the actual factual circumstances of the fraud underlying their claim.

Finally, these cases note that the "intent" of the strict construction of the deadline is to permit the debtor to know, "within the set period . . . which debts are subject to an exception to discharge." *In re Dunlap*, 217 F.3d at 315 (quoting *Murchison*, 815 F.2d at 346). Here, Plaintiffs were clear about which debt they claimed was subject to exception, the community debt owed to Plaintiffs for the funds converted or embezzled from them. Accordingly, allowing Plaintiffs to proceed violates no principle of the FRBP nor interest of the Defendant protected by *Murchison* and its progeny. See *In re Bercier*, 934 F.2d at 693, fn. 7.

Second, Defendant argues that Plaintiffs' complaint was deficient because it failed to connect the facts it alleged with the elements of the claim(s) to which these facts gave rise. Crucially, Defendant does not claim that the facts underlying these elements were missing; as Defendant says, the complaint alleged "that the debtor . . . knew of the embezzlement of his wife" and that he benefitted from her lifestyle. Rather, Defendant's opposition rests on Plaintiffs' failure to connect these facts to its allegation that Defendant's "knowledge constitutes a basis for denying the debtor

11

a discharge of his indebtedness," for instance, by alleging that Defendant was his spouse's agent, that his spouse's intent could be imputed to him, or that his own fraudulent intent could be inferred from these facts. (Doc. 3-2, para. 8).

We agree with Defendant - and Plaintiffs have conceded - that Plaintiffs' original complaint could, and ideally should, have been more explicit. Though Defendant correctly surmised both Plaintiffs' claim and the factual grounds underlying it despite the complaint's alleged ambiguity, Defendant should not have to make such inferences on its own, nor guess as to what it thinks Plaintiffs might be alleging. Nonetheless, we find that any such genuine ambiguity or confusion should have been clarified through a 12(e) "Motion for a More Definite Statement," rather than an order of dismissal. We find this more measured approach particularly warranted when, as here, Plaintiffs only failed to plead certain intermediary legal conclusions, they made their ultimate claim and its supporting factual grounds clear, and the deficiencies in their complaint were readily resolvable by amendment.

To the contrary, the Bankruptcy Court and Defendant both invoke *Twombly* and *Iqbal* to support dismissal of Plaintiffs' complaint. We disagree; indeed, we find that these cases stand for the opposite of the proposition they are being used to support. Specifically, these cases combat the unfortunately common practice of alleging "a legal conclusion couched as a factual allegation" or "a formulaic recitation of a cause of action's elements . . . without enough factual matter to suggest" that the recitations are plausible. *Twombly*, 550 U.S. at 545, 556 (internal quotations omitted).[6]

---

[6] Weeding out such conclusory allegations is the purpose of *Iqbal*'s two part test, the first step of which separates conclusory allegations from factual ones, and the second step of which evaluates the complaint based solely on the facts. See *Iqbal*, 129 S.Ct. at 1950; see generally Arthur R. Miller, *From Conley to Twombly to Iqbal: a Double Play on the Federal Rules of Civil Procedure*, 60 DUKE L.J. 1 (2010).

Here, rather than making conclusory legal allegations without factual support, Plaintiffs made concrete and detailed factual allegations without reciting the "formulaic legal conclusions" they were intended to support. This is exactly the opposite of the problem *Twombly* and *Iqbal* addressed, and whatever issues one may find with it, it draws no support from those cases' call for more definite and plausible factual allegations. See also *In re Lyons*, 2010 WL 12577, at *3, fn. 15 (Bankr. D.Kan. 2010) (rejecting 12(b)(6) dismissal and finding *Iqbal* inapplicable on similar grounds).

Finally, even had the shortcomings in Plaintiffs' original complaint rendered it so deficient as to warrant dismissal, the Bankruptcy Court erred in not granting Plaintiffs leave to amend their complaint. As discussed above, in the present circumstances, where Plaintiffs' amended complaint alleges the same conduct, transaction, and occurrence as the original complaint, amendment plainly should have been permitted. In addition, as discussed above, the strict construction deadline rules of *Murchison*, et al. pose no barrier to permitting liberal amendments, where the original complaint was filed within the original deadline, and where the complaint alleged sufficient facts to put the Defendant on notice of Plaintiffs' claim and the factual grounds underlying it.[7] See, *In re Bercier*, 934 F.2d at 693, fn. 7; *In re Fondren*, 119 B.R. 101, 104 (Bankr. S.D.Miss. 1990).

## CONCLUSION

In all, Plaintiffs' original complaint was sufficient to survive a Rule 12(b)(6) motion, and insofar as it was not leave to amend should have been granted. Going forward, Plaintiffs should be allowed to proceed directly to discovery on the exceptions to discharge, § 523(a)(2) and (a)(4),

---

[7] For clarity, we stress that we do not attempt with this observation to add our own gloss to the *Murchison* line of cases by holding that both of these characteristics - a timely complaint and sufficient factual allegations - *must* be present. Rather, we hold only that where they are both present any issues raised by these cases and Rule 4007(c) are certainly satisfied.

13

alleged in their amended complaint.  Accordingly, we VACATE the orders of the Bankruptcy Court

dismissing Plaintiffs' complaint and denying their motion to amend, and REMAND the case to the

Bankruptcy Court for further proceedings not inconsistent herewith.

SIGNED on this _17_ day of February, 2011, at Alexandria, Louisiana.


DEE D. DRELL
UNITED STATES DISTRICT JUDGE

14